UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MONICA LUZARRAGA, :
 :
                    Plaintiff, :
 : **MEMORANDUM**
         -against- : **AND ORDER**
 : 13-CV-4778 (DLI)
CAROLYN W. COLVIN, :
Commissioner of Social Security, :
 :
                  Defendant. :
-------------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

On July 30, 2010, Plaintiff Monica Luzarraga ("Plaintiff") filed an application for Social Security disability insurance benefits ("DIB") under the Social Security Act (the "Act"), alleging disability due to fibromyalgia, costochondritis, hypertension, depression, migraine headaches, and osteoarthritis of the knees. (*See* Certified Administrative Record ("R."), Dkt. Entry No. 17 at 146-47, 161.) On December 1, 2010, this application was denied and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. 86-87, 91-105.) A hearing was held before ALJ Gal Lahat on January 11, 2012. (R. 39-82.) Plaintiff appeared with counsel and testified at the hearing. (R. 49-77.) Amy Leopold, a vocational expert, also testified. (R. 77-82, 142.) By a decision dated March 29, 2012, the ALJ concluded Plaintiff was not disabled within the meaning of the Act. (R. 17-38.) On June 26, 2013, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (R. 1-6.)

Plaintiff filed the instant appeal seeking judicial review of the denial of benefits, pursuant to 42 U.S.C. § 405(g). (*See* Complaint ("Compl."), Dkt. Entry No. 1.) The Plaintiff moved for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure,

seeking reversal of the decision of the Commissioner, or in the alternative, remand for a new hearing. (*See* Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem."), Dkt. Entry No. 13.) Defendant cross-moved for judgment on the pleadings, seeking affirmance of the denial of benefits. (*See* Mem. of Law in Supp. of Def.'s Cross-Mot. for J. on the Pleadings and in Opp'n ("Def. Mem."), Dkt. Entry No. 15.) For the reasons set forth below, the Commissioner's cross-motion for judgment on the pleadings is granted. Plaintiff's motion for judgment on the pleadings is denied and this appeal is dismissed.

## BACKGROUND

**A.     Non-Medical and Self-Reported Evidence**

Plaintiff was born in 1961. (R. 49, 146, 175.) She attended high school in Ecuador and obtained a GED in the United States. (R. 50, 162). Plaintiff worked as a file clerk in a medical clinic for six months from 2009-2010 and, prior to that, worked as a fitting room attendant in a clothing warehouse in 2009 and from 2001-2004. (R. 51-53, 162, 167, 195, 211.) At the administrative law hearing, the vocational expert testified that Plaintiff's file clerk job was light exertionally and semiskilled and her work as a fitting room attendant was medium exertionally and unskilled. (R. 78.)

In her application for DIB, Plaintiff claimed that she had been unable to work since June 10, 2010 due to fibromyalgia, costochondritis, hypertension, depression, migraine headaches, and osteoarthritis of the knees. (R. 54-55, 161, 175.) In her Function Report dated August 16, 2010, Plaintiff indicated that she did not need special help to take care of personal needs or grooming. (R. 183.) She also indicated that she is able to prepare "easy" meals, do laundry, go outside if it is an emergency, manage money and pay bills, and go to church monthly. (R. 183-85.) Plaintiff related that she does not climb stairs and cannot kneel or rotate when squatting.

(R. 186.) She also stated that her wrists hurt at times; she felt uncomfortable when sitting; she had pressure behind her eyes when tired; and her lower back hurt when reaching with her arms. (R. 186-87.) She had no problems paying attention or finishing what she started, could follow instructions, and could get along with people in authority. (R.187-88.) Job stress or schedule changes made her nervous and forgetful. (R. 188.)

At the hearing, Plaintiff testified that she lives with her two children, ages 20 and 16. (R. 50-51.) She stopped working in 2010 because of pain, inflammation in her ribs, and headaches lasting 3-4 hours. (R. 54-59.) She has difficulty sleeping and takes medication to help her sleep. (R. 59-60.) She stated that she has glaucoma and can barely see. (R. 65-66.) She has back and knee pain when sitting too long, but can stand for 25 to 30 minutes at a time. (R. 61-62.) She cooks and her children clean the apartment. (R. 62-63.) She traveled to Ecuador for a month's visit in February 2011. (R. 73-74.)

**B.  Medical Evidence**

In February 2008, Plaintiff was diagnosed with anxiety disorder not otherwise specified ("NOS") and prescribed Zoloft and Xanax. (R. 228-45.) In October 2009, Dr. Lin stated that she was under his care for severe inflammation of the ribs and she needed to avoid lifting, pulling, and pushing. (R. 246.) On April 20, 2010, Plaintiff received care at Elmhurst Hospital Center for depression, headaches, backaches, and anxiety and was examined. (R. 248-58.) She had no abnormal movements, a CT scan of her brain was normal, and no cognitive deficits were noted. (*Id.*) Her heart sounds were stable and regular and her sensory, motor and cranial nerves and reflexes were all intact. (*Id.*). She felt stressed and was prescribed outpatient treatment. (R. 255.)

On May 7, 2010, Plaintiff began outpatient psychiatric services at the Puerto Rican Family Institute, Inc. ("PRFI"). (R. 260-64.) She was diagnosed with generalized anxiety disorder and panic disorder with agoraphobia, work stressors, and psychiatric symptoms. (*Id.*) Her Global Assessment Functioning (GAF) score was 65 for the year, reflecting mild symptoms, and presently 55, reflecting moderate symptoms. (R. 416.) During follow up sessions at the PRFI, Plaintiff's mood was stable and she reported feeling "fine." (R. 431.) She complained of fluctuating body pains, but was taking her medications with no side effects and denied having anxiety or panic attacks. (R. 429, 440.) After her one-month long trip to Ecuador, Plaintiff reported feeling much better. (R. 472.) On April 21, 2011 Plaintiff reported doing well. (R. 477.)

On September 11, 2010, Plaintiff saw Dr. Lin, who provided a letter on September 29, 2010, stating that Plaintiff was under his care for hypertension, migraines, fibromyalgia, depression, and osteoarthritis in the knees. (R. 275.) Dr. Lin also stated that Plaintiff was "disabled not fit for work," and could not work for one year. (*Id.*)

On September 23, 2010, Arlene Broska, Ph.D., consultatively evaluated plaintiff. (R. 282-86.) Dr. Broska diagnosed depressive disorder NOS, fibromyalgia, hypertension, migraines, osteoarthritis, and inflammation of the ribs. (R. 285.) Dr. Broska concluded that Plaintiff could follow and understand directions and instructions, perform simple tasks independently, maintain attention and concentration, cook and prepare food, clean and do laundry, take public transportation to her doctor's appointments, and dress, bathe and groom herself. (R. 284.) Joseph Gallo, M.D., also consultatively examined plaintiff on September 23, 2010 and, while diagnosing Plaintiff with fibromyalgia, depression, anxiety, osteoarthritis in knees, costochondritis, and hypertension based on her medical history, he found no physical

4

restrictions. (R. 287-91.) She needed no help changing for the examination, her joints were not tender, no muscle atrophy was evident, her strength was 5/5 in both upper and lower extremities, her hand and finger dexterity was intact, and her grip strength was 5/5. (R. 289).

Y. Burstein, M.D., a State agency psychological consultant, evaluated Plaintiff's medical record on October 7, 2010 and assessed Plaintiff's mental status for Listing 12.04 (affective disorders). (R. 292.) 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). Dr. Burstein concluded that the criteria for this listing was not met. (R. 295.) In assessing the "B" criteria, Dr. Burstein determined that Plaintiff was mildly limited in performing activities of daily living, social functioning, and maintaining concentration, persistence, or pace and had experienced one or two episodes of deterioration. (R. 302). The evidence did not establish the presence of "C" criteria. (R. 303.)

Plaintiff continued treating with Dr. Lin from June 26, 2010 to March 31, 2011. (R. 325-87.) Dr. Lin also referred Plaintiff for both a neurology and cardiology consultation during this period. However, the results of both consultations were unremarkable. (*See id.*) On March 31, 2011, Dr. Lin completed a multiple impairment questionnaire. (R. 379-87.) Dr. Lin estimated Plaintiff's pain level at four out of ten (with ten being most severe) and stated that Plaintiff could sit for three hours, stand and/or walk for two hours, and should not sit continuously throughout the day. (R. 381.) Dr. Lin also found that Plaintiff could lift and carry five pounds and occasionally ten pounds, had significant limitations in doing repetitive reaching, handling, fingering, and lifting, and was moderately limited in performing fine and gross manipulation and reaching with both arms. (R. 381-83.) Dr. Lin described Plaintiff as a malingerer and found that emotional factors contributed to the severity of her symptoms and limitations. (R. 384.)

5

Dr. Sheldon Rubin, M.D., examined Plaintiff on January 24, 2011 and April 5, 2011. (R. 394-409, 564.) He diagnosed Plaintiff with primary open-angle glaucoma that was well controlled with medicine. (R. 409.)

Plaintiff began seeing Dr. Palencia, M.D., on July 5, 2011 for joint and back pain, but complained at later appointments of a headache and chest pain. (R. 536-62.) However, the doctor's findings upon examining Plaintiff on October 22, 2011, November 22, 2011, and December 13, 2011 were normal. (R. 536-44.) At the December 13, 2011 appointment, Plaintiff stated she wanted to "go on" disability and had no other complaints other than joint and throat pain. (R. 539-41.) On December 17, 2011, Dr. Palencia completed a multiple impairment questionnaire containing his diagnosis of chronic pain syndrome and hypertension. (R. 555-62.) He estimated Plaintiff's pain level at eight out of ten and opined that Plaintiff could sit for one hour and stand and/or walk for one hour per eight-hour workday and that she needed to get up and move around every 15 to 20 minutes. (R. 557.) Dr. Palencia found that Plaintiff could only occasionally lift and carry five pounds, had significant limitations in doing repetitive reaching, handling, fingering, and lifting, and marked limitations for using her arms for reaching. (R. 558.) He also stated that Plaintiff's symptoms would likely increase if placed in a competitive work environment and that she would need to take unscheduled rest breaks every 15 to 30 minutes, be absent from work for than three times a month, and would have other physical limitations. (R. 559-61.)

Plaintiff saw Dr. Brito again on December 19, 2011 and Dr. Brito completed a psychiatric/psychological impairment questionnaire on January 9, 2012. (R. 566-73, 591.) Dr. Brito identified clinical findings of sleep disturbance, mood disturbance, recurrent panic attacks, difficulty thinking or concentrating, and generalized persistent anxiety. (R. 567.) Dr. Brito

diagnosed panic disorder with agoraphobia and assessed a GAF score of 55. (R. 566.) Dr. Brito further assessed that Plaintiff was moderately limited in maintaining attention and concentration for extended periods, working in coordination with or proximity to others without being distracted by them, and completing a normal workweek. (R. 569-71.) Dr. Brito opined that Plaintiff was markedly limited in performing activities with a schedule, maintaining regular attendance, using public transportation, and would likely be absent from work more than three times a month. (R. 569-73.) Plaintiff's anxiety caused her to remain home, but she was capable of low stress work. (R. 571-72.) She was not limited in accepting instructions, responding appropriately to criticism from supervisors, and maintaining socially appropriate behavior. (*Id.*)

## DISCUSSION

**A.     Standard of Review**

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F. 2d 751, 755 (2d Cir. 1982) (internal citations omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand to the Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F. 3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJs, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F. 3d 770, 774 (2d Cir. 1999) (quotations omitted).

**B.     Disability Claims**

To receive disability benefits, claimants must be disabled within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F. 2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Social Security Act as set forth in 20 C.F.R. §§ 404.1520 and 416.920. If at any step the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the ALJ considers whether the claimant has a "severe impairment," without reference to age, education, and work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental ability to conduct basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity ("RFC") in steps four and five. 20 C.F.R. §§ 404.1520(e), 416.920(e). In the fourth step, the claimant is not disabled if he or she is able to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). At this fifth step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work. *See Draegert v. Barnhart*, 311 F. 3d 468, 472 (2d Cir. 2002) (citing *Carroll,* 705 F. 2d at 642).

C. **The ALJ's Decision**

The ALJ found that Plaintiff, although insured for DBI benefits through December 31, 2011, was not eligible to receive those benefits. (R. 22.) The ALJ identified Plaintiff's impairments from her alleged disability onset date of June 10, 2010 as hypertension, history of

headaches/migraines, history of fibromyalgia, history of osteoarthritis and costochondritis, obesity, depression and anxiety. *Id.* These impairments, singly or in combination, however, did not meet, nor were they medically equal to, the criteria required for establishing a disability in the Listings. (R. 23.) The ALJ gave specific consideration to Sections 1.00 (disorders of the spine), 4.00 (cardiovascular disorders), 11.00 (neurological disorders), 12.04 (affective disorders), and 12.06 (anxiety-related disorders) of the Listings. (R. 23-24.) *See* 20 C.F.R. Part 404 Subpart P, Appendix 1, §§ 1.00, 4.00, 11.00, 12.04 and 12.06. The ALJ also considered Social Security Ruling (SSR) 02-1p in evaluating Plaintiff's obesity. (*See* R. 23.)

Before proceeding to the fourth step of the evaluation process, the ALJ determined Plaintiff's RFC. (R. 24.) The ALJ concluded that Plaintiff could do medium work in that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, stand, walk, and sit for six hours in an eight-hour workday, and her only non-exertional limitation was that she was limited to dealing with changes in a routine work setting. (R. 23.) The ALJ concluded that this RFC did not preclude Plaintiff from performing her past work as a clothing warehouse worker. (R. 31.) In addition, when considering Plaintiff's age (50 years old as of her date last insured), education (illiterate in English), and work experience together with her RFC, Plaintiff could perform jobs existing in substantial numbers in the regional and national economies as represented in the framework of the Medical Vocational Rule 203.19. (R. 32-33.) Thus, the ALJ concluded that Plaintiff was not disabled under the Act. (*Id.*)

**D.     Application**

Plaintiff moves for judgment on the pleadings, contending the ALJ: (1) only gave "some" weight, as opposed to "controlling" weight to the opinion from Dr. Brito; (2) failed to provide good reasons for rejecting Dr. Brito's opinion; (3) relied on the opinions of the non-

examining psychologist, Dr. Burstein, and one-time physical consultant, Dr. Gallo, over the opinions of the treating physicians; and (4) failed to properly evaluate Plaintiff's credibility. (Pl.'s Mem. at 10-19.) The Commissioner cross-moves for judgment on the pleadings, seeking affirmance of the denial of Plaintiff's benefits on the grounds that the ALJ applied the correct legal standards to determine that Plaintiff was not disabled and the factual findings are supported by substantial evidence. (*See generally* Def. Mem.)

The Court finds that the ALJ applied the appropriate legal standards and the decision is supported by substantial evidence. Plaintiff's arguments to the contrary are unfounded.

### 1. Treating Physician Rule

Plaintiff contends that the ALJ violated the treating physician rule by assigning "some" weight to Dr. Brito's opinion instead of "controlling" weight, failing to provide good reasons for rejecting Dr. Brito's opinion, and relying on the opinion of the non-examining psychologist and one-time physical consultant over the opinions of the treating physicians. (Pl.'s Mem. 10-15.)

With respect to "the nature and severity of [a claimant's] impairment(s)," 20 C.F.R. § 404.1527(d)(2), "[t]he SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Green-Younger v. Barnhart*, 335 F. 3d 99, 106 (2d Cir. 2003). A claimant's treating physician is one "who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual." *Schisler v. Bowen*, 851 F. 2d 43, 46 (2d Cir. 1988). A treating physician's medical opinion regarding the nature and severity of a claimant's impairment is given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record." *Burgess v. Astrue*, 537 F. 3d 117, 128 (2d Cir. 2008)

11

(quotation marks and alteration omitted). The Second Circuit has noted that, "[w]hile the opinions of a treating physician deserve special respect . . . they need not be given controlling weight where they are contradicted by other substantial evidence in the record." *Lazore v. Astrue*, 443 F. App'x 650, 652 (2d Cir. 2011) (quoting *Veino v. Barnhart*, 312 F. 3d 578, 588 (2d Cir. 2002)). Where a treating source's opinion is not given controlling weight, the proper weight accorded by the ALJ depends upon several factors, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark v. Comm'r of Soc. Sec.*, 143 F. 3d 115, 118 (2d Cir. 1998); *see also* 20 C.F.R. § 404.1527(c)(2).

Turning to this case, the ALJ discussed the objective medical evidence, including clinical findings of Drs. Lin, Khan, Lee, Gallo, Palencia, Broska, Pachas, Burstein, and Brito, as well as the results of diagnostic testing. (R. 26-31.) He noted that Plaintiff "primarily received routine medical care for her physical impairments, with her medications appearing effective." (R. 26). At the time of the ALJ's decision, the only medications Plaintiff took were Pristiq for depression and Clonazepam prescribed by her internist, which were not "unusual in type or dosage." (*Id.*) In determining that Plaintiff could perform medium work, he evaluated the opinions of her treating doctors, including Drs. Lin, Palencia, and Brito, explaining that:

> Although recognizing the primacy of treating source opinions, in general, under the facts of this case, the treating source opinions are nonetheless accorded less weight than those of the consultative examiners . . . . [because the opinions of Drs. Lin, Palencia, and Brito are] not supported by the record as a whole as well as the medical findings, which have generally been within normal limits .
> . . .
> In sum, the above residual functional capacity assessment is supported by the medical record, which indicates mostly normal examination findings, as well as mostly normal objective medical

12

> testing, and the opinions of the consultative examiners and State agency consultant. The claimant complains of chronic pain all over her body, but there are no substantial findings to support it, and thus she is able to perform medium work.

(R. 31.)

The ALJ did not err in making these findings. Dr. Lin opined that Plaintiff was a "malingerer," Dr. Palencia's records "reflect[ed] very limited clinical and diagnostic findings with mostly normal examinations," and Dr. Brito assigned Plaintiff a GAF score of 55, "which is consistent with a moderate, but not greater, level of symptoms or difficulty." (*Id.*)

On the other hand, Drs. Gallo and Burstein's opinions were given "considerable weight" because they were found to be consistent with the overall findings of the record. (R. 30.) Plaintiff stated that she could use public transportation, cook meals, do laundry, and groom and dress herself. (R. 183-85, 284.) Plaintiff also traveled to Ecuador for one-month during her disability period. (R. 74.) Additionally, Plaintiff showed improvement after being treated with anti-anxiety medication and therapy. (R. 477.) For these reasons, the ALJ is entitled to make a determination to afford Drs. Lin, Palencia, and Brito's opinions lesser weight than those of Drs. Gallo and Burstein.

### 2. Plaintiff's Credibility

The Second Circuit recognizes that subjective allegations of pain may serve as a basis for establishing disability. *See Taylor v. Barnhart*, 83 F. App'x 347, 350 (2d Cir. 2003) (summary order) (citing *Marcus v. Califano*, 615 F. 2d 23, 27 (2d Cir. 1979)). However, the ALJ is afforded discretion to assess the credibility of a claimant and is not "required to credit [Plaintiff's] testimony about the severity of her pain and the functional limitations it caused." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 434 (S.D.N.Y. 2010) (quoting *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (summary order)). In determining Plaintiff's

credibility, the ALJ must adhere to a two-step inquiry set forth by the regulations. *See Peck v. Astrue*, 2010 WL 3125950, at *4 (E.D.N.Y. Aug. 6, 2010). First, the ALJ must consider whether there is a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged. 20 C.F.R. § 404.1529(b); S.S.R. 96-7p. Second, if the ALJ finds that the individual suffers from a medically determinable impairment that reasonably could be expected to produce the pain or symptoms alleged, then the ALJ is to evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which they limit the individual's ability to work. 20 C.F.R. § 404.1529(c). When the ALJ finds that the claimant's testimony is not consistent with the objective medical evidence, the ALJ is to evaluate the claimant's testimony in light of seven factors: 1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of the pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; 5) any treatment, other than medication, that the claimant has received; 6) any other measures that the claimant employs to relieve the pain; and 7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

"If the ALJ rejects plaintiff's testimony after considering the objective medical evidence and any other factors deemed relevant, [he] must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief." *Correale-Englehart*, 687 F. Supp. 2d at 435. When the ALJ neglects to discuss at length his credibility determination with sufficient detail to permit the reviewing court to determine whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence, remand is appropriate. *Id.* at 435-36; *see also Grosse v.*

*Comm'r of Soc. Sec.*, 2011 WL 128565, at *5 (E.D.N.Y. Jan. 14, 2011) (finding the ALJ committed legal error by failing to apply factors two through seven); *Valet v. Astrue*, 2012 WL 194970, at *22 (E.D.N.Y. Jan. 23, 2012) (remanding because the ALJ failed to address all seven factors).

Turning to the instant action, Plaintiff contends that the ALJ found her not credible and found it significant that she received unemployment benefits during the period at issue. (Pl.'s Mem. at 16-17.) First, the ALJ properly discredited Plaintiff's subjective complaints of pain and symptoms. The ALJ discussed the medical evidence in depth (as discussed above) and found there was insufficient medical evidence to support Plaintiff's subjective complaints to the extent her complaints were inconsistent with the RFC. (R. 25-31.) The ALJ also noted that the substantial evidence indicated Plaintiff was able to perform activities of daily living, travel internationally, and use public transportation. (R. 26.)

Second, courts in the Second Circuit have determined "that an ALJ may consider evidence that the claimant received unemployment benefits and/or certified that he was ready, willing, and able to work during the time period for which he claims disability benefits as adverse factors in the ALJ's credibility determination." *Felix v. Astrue*, 2012 WL 3043203, *10 (E.D.N.Y. July 24, 2012) (citing to *House v. Comm'r of Soc. Sec.*, 2012 WL 1029657 (N.D.N.Y. Feb. 29, 2012)). Accordingly, the ALJ properly considered the inconsistency between Plaintiff's seeking of unemployment benefits and her claims of disability for the same time period as one of the factors relevant to assessing Plaintiff's allegations of subjective pain. Based on this inconsistency and the fact that Plaintiff's allegations of pain are not substantiated by any objective medical evidence or Plaintiff's daily activities, the ALJ's adverse credibility determination is supported by substantial evidence in the record.

## CONCLUSION

For the foregoing reasons, the Plaintiff's motion for judgment on the pleadings is denied. The Commissioner's cross-motion for judgment on the pleadings is granted and this appeal is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
      March 24, 2015

/s/
DORA L. IRIZARRY
United States District Judge